JOHN E. SCHRAGE, APPELLEE, v. JOHN A. MILLER, APPELLANT.

FILED MAY 18, 1932.   No. 27858.

268

*Baylor & Tou Velle,* for appellant.

*E. T. Hayes* and *Gray & Brumbaugh, contra.*

Heard before ROSE, GOOD and DAY, JJ., and MESSMORE and NISLEY, District Judges.

MESSMORE, District Judge.

This is an appeal from a judgment based upon a jury's

verdict rendered in the district court for Buffalo county, where appellee, plaintiff below, recovered a verdict in the sum of $7,500 against appellant, defendant below. Motion for a new trial was overruled and defendant appeals to this court to reverse said judgment.

Plaintiff's petition alleges the residence of the parties, details the happening of the accident, sets forth certain injuries received by plaintiff, and alleges that the accident and injuries were the direct and proximate result of the negligence of defendant, setting forth certain acts of negligence of defendant, proximately causing said injuries, as follows: Entering a primary highway from a section line road without stopping, as required by law, and in violation of the stop sign stationed at the intersection of said primary highway and said section line road; entering said primary highway from said road at an approximate speed of 40 miles an hour; failing to blow his horn or give plaintiff notice of his intention to so proceed; failing to apply his brakes and to stop his car when the presence of plaintiff's car on said highway became known or should have become known to defendant; failing to keep a proper lookout, and in turning his car to the east and south and directly into and against plaintiff's car, when, by proceeding straight ahead or by turning to the right and west, he could have avoided colliding with plaintiff. The alleged injuries received by plaintiff in said accident are detailed at some length in his petition. Judgment is prayed in the sum of $15,198.50.

Defendant's answer admits the occurrence of the collision, generally denying each and every other allegation of the petition, and alleging affirmatively in part as follows: That plaintiff at said time and place committed careless and negligent acts of omission and commission which constituted the proximate cause of said collision and of the injuries and loss, if any, sustained by plaintiff, and that said plaintiff by his careless and negligent acts of omission and commission was guilty of contributory negligence and contributed to the cause of said collision

and of the injuries and loss, if any, sustained by the plaintiff; further charging various specific acts of carelessness on the part of plaintiff. Plaintiff's reply was a general denial.

The record discloses that plaintiff, a farmer, 40 years of age, living a mile north of St. Libory was proceeding eastward in his Pontiac coupé with one John Evers from Kearney to his home at about 7:30 on the evening of April 10, 1930, on highway number 30, an arterial highway known as the Lincoln Highway, which parallels the Union Pacific right of way to the north thereof, said highway running in an almost straight east and west direction at the point of collision, which was some 6 miles east of Kearney; that at about the point of collision a road running from the north, known as the Buda school road, and also referred to as the Poole road, intersects with said highway; that as plaintiff approached the intersection he saw a car coming from the north towards the intersection at an estimated rate of speed of 45 miles an hour; that his car at the time was some 125 feet west of the intersection and defendant's car was at an estimated distance of 250 feet north of said intersection; that plaintiff did not continue to look at the other car coming from the north, but continued on his way, looking east; that he noticed a stop sign at the northwest corner of the intersection off the highway on which he was traveling and on the intersecting road; that when plaintiff next saw the approaching car he was on the south side of the highway, the front end of his car over into the intersection in question about 20 feet; that when he next saw the lights of defendant's car they were pointing in a southeasterly direction at the rear of his car; that defendant's car was about 30 feet from his car to the north at that time; that plaintiff did not hear a horn sounded, but was in a position to have heard it had one been blown; that at the time of the collision and immediately prior thereto he was driving at a rate of speed of about 25 miles an hour; that the rear part of his car was struck by the front right side and right bumper of

defendant's car; that defendant's car was locked into plaintiff's car, the bumper of defendant's car being caught between the front and rear wheels of plaintiff's car on the west side thereof.

The testimony of defendant, a lawyer practicing in Kearney, was to the effect that he was driving a Studebaker Commander sedan at the time of the collision, accompanied by Mr. Blackledge, his law partner; that just prior to the accident he was proceeding south to the intersection in question, intending to turn west there to Kearney; that there was some considerable dust and it was rising quite a bit; that it was getting dark and he was unable to determine how far objects were on account of the dust; that it was sprinkling a trifle, not sufficient to settle the dust, but enough to impair the vision through the windshield; that it was somewhere near 8:20 p. m.; that immediately prior to coming to the Lincoln Highway and when about 10 rods north of the intersection, he was driving at a rate of speed of about 15 miles an hour and had been driving prior to that time at a rate of speed of about 30 miles an hour after he had left the town of Poole; that on arriving at the point some 10 rods north of the intersection he felt he was approaching it, but was not sure, but did reduce the speed of his car at that time; that he continued to look in the direction in which his car was going; that he could see both ways and did see dust flying both ways and saw the lights of cars going east on the highway, but was not sure whether he saw one or more cars; saw lights of a car to his right; that he first discovered he had reached the north line of the intersection when he felt his car wheels touch a ridge of gravel; that without stopping at the stop sign he applied his brakes and went into the intersection a distance of 15 or 20 feet when the collision occurred; that immediately on stopping plaintiff's car was right on him and hit his car and jerked it sideways towards the east, the right end of the front bumper being struck by plaintiff's car; the front end of his car faced towards the east when it was jerked, in fact,

it was facing more of an east than a south direction, but was not facing northeast like the highway runs at that point; that plaintiff's car was right in front of his car right after the collision and after the cars came to a stop, headed a little bit north of east.

Mr. Blackledge corroborated the testimony of defendant; told of the rate of speed at which defendant was driving and what he observed.

There was considerable medical testimony offered relative to the injuries plaintiff received and also testimony of restlessness on his part and the pain that he endured. This testimony was controverted by that of witnesses for defendant. There was some testimony concerning the amount of loss that accrued to plaintiff by reason of his loss of time and his inability to carry on the work he had formerly done.

The testimony of several witnesses was offered who were at the scene of the collision immediately after its occurrence and who testified to the positions of the cars in behalf of plaintiff and also to certain admissions made by defendant at that time in reference to requesting plaintiff to go to a hospital and agreeing to have his car fixed. There was some dispute as to the language used in the admissions, but all the witnesses testified to their versions of what was said by both plaintiff and defendant.

The bill of exceptions contains some 430 pages, but the above statement is an abstract of the most important features of the evidence adduced.

Defendant complains of instruction No. 10, given by the court on its own motion, which is as follows "The jury is instructed that the statutes of the state of Nebraska provide that no person shall operate a motor vehicle on a public street or highway at a rate of speed greater than is reasonable and proper, having regard for the traffic and the use of the road and the condition of the road, nor at a speed such as to endanger the life or limb of any person, nor in any case at a rate of speed exceeding forty-five miles per hour.

"The statutes of Nebraska further provide that a motor vehicle traveling upon a public highway shall give the right of way to vehicles approaching from the right, and shall have the right of way over those approaching from the left when said vehicles reach the intersection at approximately the same time, but the vehicle entering the intersection first shall have the right of way.

"The statutes of Nebraska further provide that all motor vehicles entering or crossing state highways on which stop signs are erected shall come to a full stop as near the right of way line as possible, before driving onto such state highway, and, regardless of direction, shall give the right of way to vehicles upon said highway.

"These statutes are for your information as to the law in the case, but if you find from the evidence in the trial that these statutes or either of them have been violated by either plaintiff or defendant, you are instructed that such violation is not in and of itself negligence, but you are instructed that it is a circumstance which you may take into consideration in determining whether or not the party so violating was guilty of negligence."

In conjunction with this instruction it may be well to set out instructions Nos. 6 and 11. Instruction No. 6 is as follows: "The court instructs the jury that the care which may be termed ordinary is such a degree of care as a prudent and reasonable man would exercise under the existing circumstances and conditions." Instruction No. 11 is as follows: "The jury is instructed that the road intersection is that part of the road bounded by lines drawn across the road from one property line to the other, and what is known as the intersection is the square or oblong included in such line. Upon approaching a highway intersection, it is the duty of the driver of a motor vehicle to look to the right or left for approaching vehicles; and it is for you to determine whether either of the parties failed to exercise due care in this regard. The driver of an automobile upon reaching an intersection has the right of way over a vehicle approaching on his left, and may ordinarily proceed to

cross, but if the situation is such as to indicate to the mind of an ordinarily prudent person in his position that to proceed would probably result in collision, then he should exercise ordinary care to prevent an accident, even to the extent of waiving his right."

The principal contention of defendant in reference to instruction No. 10 is that the court committed error in failing to place a judicial interpretation on section 39-1116, Comp. St. 1929, for the instruction of the jury, but used language which permitted the jury to infer that a violation of the statutory provision, even in the absence of any other facts of negligence or any other circumstances or conditions, might be considered negligence; that defendant was entitled to have the jury instructed concerning the reciprocal rights and duties of plaintiff and defendant, both with regard to the statute pertaining to arterial highways and without regard to such statute; that said rights and duties vitally affected the question of proximate cause. *McCulley v. Anderson,* 119 Neb. 105.

In instruction No. 10 it will be noted that the court used the language of the statute. At the conclusion of the instruction it admonished the jury that a violation of the statutory provisions, as previously set forth therein, by either plaintiff or defendant is not in and of itself negligence, but instructed that it was a circumstance for the jury to take into consideration in determining whether or not the party so violating was guilty of negligence. Reciprocal means mutual; alternating; mutually interchangeable. This instruction defined the duties of both parties as to the rate of speed a party may travel on the highways of Nebraska, the duty of defendant on coming to a stop sign in the state of Nebraska, and the right of way of the parties. Instruction No. 11 sets out the duties of drivers of motor vehicles upon reaching an intersection, the right of way, and the degree of care to be used, which is ordinary care. This would seem to cover the reciprocal rights and duties of the parties in the situation that confronted them at the time of the collision and prior thereto.

The record discloses that defendant was acquainted with the intersection in question and had known the Poole road on which he was driving for a period of 40 years or more; had been over the same road 6 weeks previous to the time of the collision; at the time of the collision did not stop at the stop sign on the side of the intersection, but struck a ridge of gravel on the north line of said intersection, applied his brakes, and proceeded a distance of 15 feet or more into the intersection, and by admissions in his own testimony conceded that plaintiff had the right of way. We believe the court fully and properly instructed under the facts adduced at the trial on this feature of the case.

In the case of *Thrapp v. Meyers,* 114 Neb. 689, this court held: "The driver of an automobile, upon reaching an intersection, has the right of way over a vehicle approaching on his left, and may ordinarily proceed to cross; but if the situation is such as to indicate to the mind of an ordinarily prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent accident, even to the extent of waiving his right." This is the very language used in instruction No. 11, above, and which fully sets forth the duties of motorists on approaching an intersection.

In the case of *McCulley v. Anderson, supra,* on which defendant relies, the facts and circumstances of that case are not analogous to the facts in the instant case, there being charged therein a violation of a city ordinance. We believe that the trial court did not err, and that defendant had the full advantage of all his substantive rights under the statute and the court's instructions.

Defendant assigns as error the giving of instruction No. 12, which instruction sets out in detail the elements of proof required of plaintiff and which elements of proof plaintiff was required to prove by a preponderance of the evidence, the objection being that the same instruction does not apprise the jury of the defense of contributory negligence which defendant had pleaded in his answer.

We believe that the holding of this court in the case of *Cornforth v. Graham Ice Cream Co.*, 109 Neb. 426, is controlling, wherein it is stated: "Instructions given to the jury by the court must be considered as a whole, and the mere fact that a separate paragraph of the instructions (which states the elements necessary to allow plaintiff to recover) does not inform the jury that the defense of the contributory negligence of plaintiff was made by the defendant, nor state the law governing such defense, is not prejudicially erroneous, where the fact of such defense and the rules of law applicable thereto are stated in other paragraphs of the charge." We believe that the court did not err in giving instruction No. 12.

Defendant complains of instruction No. 13, given by the court, which instruction is as follows: "You are instructed that the burden of proving contributory negligence on the part of the plaintiff sufficient to defeat a recovery is upon the defendant, unless the evidence offered by plaintiff discloses that plaintiff was guilty of more than slight negligence as compared with the negligence of the defendant." The objection made to this instruction is that it places the burden of proof upon the wrong party and misstates the law as to contributory negligence, citing *Gerish v. Hinchey*, 120 Neb. 51. This court has heretofore held that the contributory negligence of plaintiff, pleaded in the answer, is an affirmative defense which the defendant pleads and must prove by a preponderance of the evidence. If defendant pleads that plaintiff was guilty of contributory negligence, or that the accident resulted solely from his negligence, the burden is upon the defendant to prove those defenses, and the burden does not shift during the trial of the case, but he should receive the benefit of plaintiff's evidence tending to prove those issues. *McGahey v. Citizens R. Co.*, 88 Neb. 218.

"Contributory negligence is an affirmative defense, which must be pleaded, and ordinarily involves questions of fact for the determination of the jury." *Cook v.*

*Chicago, R. I. & P. R. Co.,* 78 Neb. 64. See *Union Stock Yards Co. v. Conoyer,* 41 Neb. 617.

"Contributory negligence is an affirmative defense, the burden of proving which is upon the party pleading it, and must be established, if at all, by a preponderance of the evidence pertinent to that issue contained in the whole record." *Vertrees v. Gage County,* 81 Neb. 213.

"Contributory negligence is an affirmative defense, and cannot be proved unless alleged in the pleadings." *Reed v. Chicago, B. & Q. R. Co.,* 98 Neb. 19. See *Knies v. Lang,* 116 Neb. 387; *McCulley v. Anderson,* 119 Neb. 105.

In the case of *Gerish v. Hinchey, supra,* the instruction complained of and held to be erroneous by the writer of the opinion in that case is stated as follows: "As heretofore stated, defendant not only denies that he was negligent in any respect whatsoever, but alleges that it was the fault and negligence of plaintiff herself that was the direct cause of the accident and the injury to her and her car. The defendant having thus alleged negligence on the part of plaintiff, the burden of proof is upon him to establish the same by a preponderance of the evidence before he can prevail in said defense." The instruction so quoted must have been misconceived by the writer of the opinion. No distinction can be drawn between the rule as announced in the case of *Gerish v. Hinchey, supra,* and the other cases cited in support of the proposition that contributory negligence, if pleaded in the answer, is an affirmative defense and must be proved by a preponderance of the evidence. We are convinced that the rule of law should be that, where the defendant alleges in his answer contributory negligence on the part of the plaintiff, he must prove the same by a preponderance of the evidence, the burden being upon defendant to do so. Without going into detail with reference to the cases cited in support of the rule as laid down in the case of *Gerish v. Hinchey, supra,* to wit, *Davenport v. Intermountain R., L. & P. Co.,* 108 Neb. 387, and *Gibson v. Kelkenny,* 112 Neb. 524, a careful reading of these cases will clearly show that the error complained of was in

fixing a standard of comparison of the respective negligence of defendant and plaintiff, violative of the standard fixed by statute, and not by improperly fixing the burden of proving contributory negligence. The erroneous rule in the opinion in *Gerish v. Hinchey, supra,* although not appearing in the syllabus, was followed in *Killion v. Dinklage,* 121 Neb. 322. In so far as these cases are in conflict with the rule announced herein they are overruled.

We have examined instruction No. 5, requested by defendant and given by the trial court in the instant case, on the comparative negligence rule, which states the provisions of the statute, and find that the defendant had his theory of such rule presented to the jury. Assignments of error 4 and 5 have been covered in the discussion of the assignments of error heretofore stated and need not be further discussed in this opinion. Assignments of error 7, 8, and 9 have to do with instructions tendered by the defendant which were refused by the trial court. We have examined these instructions and find that the subject-matter pertinent to this case has been given by the court in its instructions, and when the same are considered in their entirety, they properly reflect the law of the case. Some of the instructions requested by defendant assume facts which are not proved conclusively and therefore were properly rejected by the trial court. *Buck v. Hogeboom,* 2 Neb. (Unof.) 853; 14 R. C. L. 800, sec. 60.

Defendant complains of instruction No. 20½ wherein the court instructed the jury: "If you believe from all the evidence in the case offered by both parties that both plaintiff and defendant were negligent in and about the matters complained of in the petition and as shown by the evidence, and that they were equally negligent or that plaintiff's contributory negligence, if any, was more than slight in comparison with that of the defendant, if any, then you cannot allow plaintiff any damages against the defendant." This instruction is similar to that given by the trial court in the case of *Emel v. Standard Oil Co.,*

117 Neb. 418, and which met with the approval of this court. Under the facts and circumstances this instruction is not erroneous, because the comparative negligence rule had been previously stated in two instructions given by the court, although the instruction might well be criticized as not being a full statement of the law of comparative negligence which the defendant was entitled to have submitted to the jury, but in view of the instructions given and the fact that the court gave instruction No. 5 requested by defendant, we do not feel that this instruction is prejudicially erroneous.

Defendant complains that the verdict of the jury is excessive. There is a marked conflict in the testimony of the medical experts, those for plaintiff testifying to the severity and permanency of his injuries, the physician testifying contra declaring that his injuries were slight. The amount of damages for personal injuries is for the determination of the jury. The rule has been long established in this jurisdiction that, even though the evidence conflicts, the verdict will not be disturbed if there is sufficient competent evidence to sustain such verdict. *Pricer v. Lincoln Gas & Electric Light Co.*, 111 Neb. 209. There is sufficient evidence to sustain the verdict in this case.

Appellant complains of misconduct of counsel in his argument to the jury, a part of which is before this court for its consideration. Counsel for defendant objected to the statements of counsel for plaintiff to the jury; the court sustained such objection and admonished the jury not to consider such statements. We do not believe that such conduct on the part of plaintiff's counsel in this respect was prejudicial to the rights of defendant. "Ordinarily, in a civil action, statements made by plaintiff's counsel in his closing argument will not justify a reversal of the judgment, where it appears that exception was taken to the statement at the time it was made, the exception sustained, and the jury duly admonished by the court." *Egner v. Curtis, Towle & Paine Co.*, 96 Neb. 18.

Complaint is made with reference to the admissibility

of testimony and the rulings of the trial court thereon as being adverse to defendant's rights in several instances. We have carefully analyzed the questions objected to by defendant and the answers given and find there was no prejudicial error on the part of the trial court.

The verdict is sustained by the evidence, is not contrary to and against its clear weight, and is not the result of passion and prejudice, and for the reasons given in this opinion, we believe the judgment of the district court should be affirmed.

AFFIRMED.